IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Dale Prestenbach<br>3300 Hwy 308<br>Napoleonville, LA 70390 | CASE NO.<br><br>JUDGE |
| Lisa Prestenbach<br>3300 Hwy 308<br>Napoleonville, LA 70390 | |
| D&M Pharmacy, Inc.<br>1772 Canal Blvd.<br>Thibodaux, LA 70301, | **COMPLAINT FOR MONEY DAMAGES**<br><br>**Jury Demand Endorsed Hereon** |
| Plaintiffs, | |
| v. | |
| Dr. Joseph Palumbo,<br>212 W Troy Street, Suite B<br>Dothan, AL 36303 | |
| Dr. J. Foster Chapman<br>201 Rue Beauregard, Suite 202<br>Lafayette, LA 70508 | |
| Dr. Ronnie Waldrop<br>201 Rue Beauregard, Suite 202<br>Lafayette, LA 70508 | |
| Alliance Pharmacy Management, LLC<br>c/o GG International, Registered Agent<br>6210 N. Jones Blvd., Suite 751986<br>Las Vegas, NV 89136 | |

The Mitland Group, LLC                          )
c/o GG International , Registered Agent          )
6210 N. Jones Blvd., Suite 751986                )
Las Vegas, NV 89136                              )
                                                 )
Zalome Moscoso                                   )
7260 West Azure Dr., Suite 140-2560              )
Las Vegas, Nevada 89130                          )
                                                 )
SOMA Health Solutions, LLC                       )
c/o GG International, Registered Agent            )
6210 N. Jones Blvd., Suite 751986                )
Las Vegas, NV 89136                              )
                                                 )
Chris Landau                                     )
701 Madison St.                                  )
Tavares, FL 32778-2323                           )
                                                 )
Jason Lavoie                                     )
4581 Weston Rd. #236                             )
Weston, FL 33331                                 )
                                                 )
Marc Singer                                      )
3460 Royal Palm Ave.                             )
Miami Beach, FL 33140-3940                       )
                                                 )
Vanessa Montero                                  )
1951 NW South River Dr., Apt. 504                )
Miami, FL 33125-2785                             )
                                                 )
Christina Bermudez                               )
1463 Cecilia Ave.                                )
Coral Gables, FL 33146-1622                      )
                                                 )
Real Value Products                              )
c/o I. Randall Chudnow                           )
4742 Dodge St.                                   )
San Antonio, TX 78217                            )
                                                 )
Landmark Supply, Inc.                            )
c/o George Grumat                                )
199 Main Street, Second Floor                    )
Kenesburg, NJ 07734                              )
                                                 )
                                                 )

Dockside Partners, LLC                          )
c/o Kyle Bumgarner, Registered Agent            )
1025 State Street                               )
Bowling Green, KY 42101                         )
                                                )
and

John Does (doctors)(Affiliated
entities)(wholesalers)(employees/associates
affiliates),

     Defendants.

  Now come the Plaintiffs, Dale Prestenbach, Lisa Prestenbach and D&M Pharmacy, Inc. (collectively "Plaintiffs"), and for their complaint for money damages on the basis of the Racketeer Influenced and Corrupt Organizations Act, the Florida Civil Remedies for Criminal Practices Act, Fraud, Civil Conspiracy, Breach of Contract, and Tortious Interference with a Business Relationship against defendants, hereby allege and state as follows:

## JURISDICTION AND VENUE

  1. This action arises under the federal RACKETEER INFLUENCED and CORRUPT ORGANIZATIONS ACT, Title 18 U.S.C. § 1961 *et seq.*, FLORIDA CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT, Fla. Stat. § 772.101 *et seq.*, (hereinafter collectively referred to as "RICO"), and the common law of the State of Florida.

  2. This action also seeks recovery of money damages for fraud, breach of contract and tortious interference with an existing business relationship.

  3. The jurisdiction of this Court is invoked in accordance with the provisions of Title 28 U.S.C. §§ 1331 and 1367. Claims are also stated under common law and the Constitution and statutes of the United States and the State of Florida.

4.      The Agreement (as defined below) at issue provides that it is: "subject to, and governed by, the laws of the State of Florida without regard to conflicts of laws provisions. Any legal action, suit or proceeding with respect to this Agreement shall be brought in a state of federal court in the State of Florida and each of the Parties hereto accepted, generally and unconditionally, the jurisdiction of the aforesaid courts."

5.      Venue is prescribed by the General Venue Statute. 28 U.S.C. § 1391, and it properly lies in this Court, where each claim arose in its entirety.

### THE PARTIES

6.      Plaintiffs, Dale Prestenbach and Lisa Prestenbach, husband and wife, are individuals residing in Napoleonville, LA and are the owners/operators of Plaintiff D&M Pharmacy, Inc.

7.      D&M Pharmacy, Inc. ("D&M"), was, at all relevant times, a foreign corporation operating as a community retail pharmacy in Thibodaux, Louisiana. D&M was duly incorporated in Louisiana and has its principal place of business at 1772 Canal Blvd., Thibodaux, LA 70301.

8.      Defendant, Dr. Joseph Palumbo ("Palumbo"), is an individual who, upon information and belief, resides in the State of Alabama and who is a physician that issued medical prescriptions at the request of Alliance Pharmacy Management, LLC as part of the fraudulent scheme alleged herein.

9.      Defendant, Dr. J. Foster Chapman ("Chapman"), is an individual who, upon information and belief, resides in the State of Louisiana and who is a physician that issued medical prescriptions at the request of Alliance Pharmacy Management, LLC as part of the fraudulent scheme alleged herein.

10.     Defendant, Dr. Ronnie Waldrop ("Waldrop"), is an individual who, upon information and belief, resides in the State of Louisiana and who is a physician that issued medical prescriptions

at the request of Alliance Pharmacy Management, LLC as part of the fraudulent scheme alleged herein.

11.     Defendant, Alliance Pharmacy Management, LLC ("Alliance"), is a foreign limited liability company organized under the laws of the State of Nevada on or about October 5, 2018, with its principal place of business located at 7480 Bird Road, Suite 600, Miami, FL 33155.

12.     Defendant, The Mitland Group, LLC ("Mitland"), is a foreign limited liability company organized under the laws of the State of Nevada on or about March 11, 2019, believed to have its principal place of business located at 7480 Bird Road, Suite 600, Miami, FL 33155.

13.     Defendant, Zalome Moscoso ("Moscoso"), is an individual who, upon information and belief, resides in the State of Nevada at 7260 West Azure Dr., Suite 140-2560, Las Vegas, NV 89130, and who has served as manager and/or officer of Mitland at all relevant times.

14.     Defendant, SOMA Health Solutions, LLC, ("SOMA"), is a foreign limited liability company organized under the laws of the State of Nevada on or about March 11, 2019, with its principal place of business located at 7480 Bird Road, Suite 600, Miami, FL 33155.

15.     Defendant, Chris Landau ("Landau"), is an individual who was an officer, employee and/or representative of Alliance and who participated in the fraudulent scheme alleged herein. Upon information and belief, Landau resides in the State of Florida at 701 Madison St., Tavares, FL 32778-2323.

16.     Defendant, Jason Lavoie ("Lavoie"), is an individual who was an officer, employee and/or representative of Alliance and who participated in the fraudulent scheme alleged herein. Upon information and belief, Lavoie resides in the State of Florida at 4581 Weston Rd., #236, Weston, FL 33331.

17.     Defendant, Marc Singer ("Singer"), is an individual who was an officer, employee and/or representative of Alliance and who participated in the fraudulent scheme alleged herein. Upon information and belief, Singer resides in the State of Florida at 3460 Royal Palm Ave., Miami Beach, FL 33140.

18.     Defendant, Vanessa Montero ("Montero"), is an individual who was an officer, employee and/or representative of Alliance and who participated in the fraudulent scheme alleged herein. Upon information and belief, Montero resides in the State of Florida at 1951 NW South River Dr., Apt. 504, Miami, FL 33125-2785.

19.     Defendant, Christina Bermudez ("Bermudez"), is an individual who was an officer, employee and/or representative of Alliance and who participated in the fraudulent scheme alleged herein. Upon information and belief, Bermudez resides in the State of Florida at 1463 Cecilia Ave., Coral Gables, FL 33146-2785.

20.     Defendant, Real Value Products ("Real Value"), is a wholesaler who provided prescription drugs as part of the fraudulent scheme alleged herein. Upon information and belief, it has its principal place of business located at 4742 Dodge St., San Antonio, TX 78217-3711.

21.     Defendant, Landmark Supply Inc. ("Landmark"), is a wholesaler organized under the laws of the State of New Jersey on or about August 2011, which provided prescription drugs as part of the fraudulent scheme alleged herein. Upon information and belief, it has its principal place of business located at 199 Main Street, Second Floor, Kenesburg, NJ 07734.

22.     Defendant, Dockside Partners, LLC ("Dockside"), is a limited liability company organized under the laws of the State of Kentucky on or about October 6, 2017 with its principal place of business located at East Main Street, Building 202, Scottsville, KY 42164.

23.     John Doe Defendants 1-10 are entities that will be identified through necessary discovery and who, upon information and belief, engaged or participated in the wrongful conduct that proximately caused Plaintiffs' damages.

24.     John Doe Defendants 11-20 are individuals who will be identified through necessary discovery and who, upon information and belief, engaged or participated in the wrongful conduct that proximately caused Plaintiffs' damages.

## NATURE OF ACTION AND RELIEF SOUGHT

25.     Plaintiffs bring this action as a result of being unlawfully targeted in and otherwise defrauded by the Defendants through an unlawful conspiracy and pattern of racketeering/criminal activities commencing in 2018 and continuing to 2019, all in violation of RICO. Defendants collectively were an association-in-fact which constituted the criminal enterprise. As further alleged herein, the Defendants engaged in various racketeering activities, including but not limited to, mail and wire fraud and felony theft. The damages incurred by the Plaintiffs proximately caused by the Defendants' racketeering acts, fraudulent conduct, and conspiracy are in excess of $1 million.

26.     In late 2018, Alliance, by and through certain of its employees, owners, or affiliates, including but not limited Landau and Lavoie, approached the Plaintiffs with what appeared to be a legitimate business proposal whereby Alliance would provide "marketing and business processing outsourcing services" for the benefit of Plaintiffs' well-established community retail pharmacy located and operating in Thibodaux, Louisiana. *See,* Business Process Outsourcing Agreement attached hereto as Exhibit 1 (the "Alliance Agreement").

27.     Landau randomly approached Plaintiffs while claiming to be in the Thibodaux, Louisiana area for the alleged purpose of meeting an unrelated pharmacy owner.  According to

Landau, the unrelated pharmacy owner was not available and, therefore, after his intended meeting

did not proceed, Landau claimed to just be travelling home and happened upon Plaintiffs' pharmacy.

28.     However, upon information and belief, Landau expressly targeted Plaintiffs for

purposes of presenting the fraudulent scheme that is the subject of this Complaint.

29.     Following the initial meeting with Landau, other meetings, conferences and/or

communications occurred between Plaintiffs and Landau, LaVoie, and/or Singer concerning the

proposed business opportunity.

30.     Landau, Lavoie, and/or Singer represented that the business arrangement being

presented to Plaintiffs was a new business model in so far as it was being implemented for the first

time through the Plaintiffs' pharmacy, as more fully described in the Alliance Agreement. *See,*

Exhibit 1. Defendants advised that historically they would buy struggling pharmacies and implement

their purported business plan directly in order to improve the business.  Defendants further advised

that they successfully operated numerous pharmacies in many states with the goal to have at least one

pharmacy in every state.  Landau even presented Plaintiffs with his business card that included a

domain name he owns: "www.webuyuglypharmacies.com."

31.     According to the Defendants' representations, the business model proposed to

Plaintiffs would be the same implemented by Defendants at their own pharmacies, but the

Defendants would not be required to deal with all of the other aspects involved in owning and

operating a pharmacy directly.

32.     Following the completion of all presentations of the business opportunity by Landau,

Lavoie, and/or Singer, Defendants presented Plaintiffs with the Alliance Agreement.

33.     Among other things, the Alliance Agreement, provided that Alliance Pharmacy

Management, LLC would:

a.     "Perform the Services in . . . a professional and business-like manner . . . consistent with general industry standards and practices". *Id*. at §2.a.; and

b.     "Perform the Services and carry out its obligations under this Agreement in compliance with (i) all applicable federal, state and local laws and regulations". *Id*. at §2 h.

34.     In general, the Alliance Agreement described the business model in a consistent manner as that presented by Defendants. But in addition to the purported long success of the model at Defendants' own pharmacies, Defendants made numerous representations and warranties of the business model's compliance with all applicable laws and all agreements/contracts that are customary for pharmacies such as Plaintiffs'. Further the representations were on behalf of Alliance Pharmacy Management, LLC, its owners, principals, agents, representatives, employees, contractors, and even family members.

35.     Further, Defendants clearly stood behind the business model and program as the Alliance Agreement contained very broad indemnifications at § 7 a. and b.

36.     Section 7 a. provided:

> Contractor shall indemnify, defend and hold harmless Company, its parents, subsidiaries and affiliates, their respective directors, officers, employees, agents, attorneys, affiliates, successors, and assigns from all claims, losses, liabilities, damages, suits, actions, government procedures, taxes, penalties or interest, associated auditing and legal expenses and other costs incurred by Company (including reasonable attorneys' fees and costs of suits), which in any way arise out of:  (a) material breach of its duties hereunder or under the Business Associate Agreement; (b) misrepresentation or breach of any representation, warranty, obligation or covenant of this Agreement; (c) or willful or gross misconduct or fraud in connection with any obligations, representations, warranties or covenants of this Agreement.

37.     Section 7 b. provided:

> Contractor shall further indemnify Company for any claims, losses, liabilities, damages, suits, actions, government procedures, taxes, penalties or interest, associated auditing and legal expenses (including reasonable attorneys' fees and costs) and other costs incurred by Company that arise out any [sic] third party's actions that result in Contractor's misrepresentation or breach of any representation or warranty made pursuant to this Agreement.

38.     Prior to entering into the Alliance Agreement, Plaintiffs had already had a long-standing existing, profitable business relationship with a well-known pharmacy benefit manager ("PBM"), nonparty, Express Scripts, Inc. ("Express Scripts"). Upon information and belief, one or more of the Defendants were aware of Plaintiffs' existing business relationship with Express Scripts.

39.     PBMs, such as Express Scripts, have form contracts such that any independent pharmacy would have similar PBM contracts to those to which Plaintiffs was a party. Based on Landau's, Lavoie's, and/or Singer's representations that they own independent pharmacies, Defendants would have knowledge of the requirements of pharmacies under a PBM contract.

40.     Express Scripts was not the lone PBM targeted by the Alliance business model, as prescribed drugs were also reimbursed through other PBMs.

41.     As part of the business model under the Alliance Agreement (the "Alliance Program"), Alliance engaged Mitland, a parent, related, agent or affiliated company with Alliance, to purportedly advertise and locate individuals with distinct medical conditions.

42.     As represented by Defendants, Mitland would conduct targeted advertising on the internet. Upon information and belief, the targeted ads would focus on individuals who have searched for or were currently searching for various types of medicinal creams, related epidermal products, certain anti-inflammatories, and muscle relaxants generally available by prescription.

43.     As part of the Alliance Program, once an individual clicked on one of the targeted ads directed by Mitland, the individual was prompted to purportedly participate in a thirty minute video conference appointment (the "Video Appointments") with a physician including the defendant doctors named herein (the "Defendant Doctors").

44.     Upon information and belief, Alliance, together with some or all of the other Defendants, developed a list of certain prescription creams, related epidermal prescription medicines, certain anti-inflammatories, and muscle relaxants that have specific National Drug Codes ("NDC's") (the "Alliance Drugs").

45.     The formulas of the specific prescriptions available through the Alliance Program are identical to other medicinal creams, related epidermal products, certain anti-inflammatories, and muscle relaxants generally available by prescription (the "Other Drugs").

46.     Plaintiffs elected to participate in the Alliance Program because it seemed like a legitimate means of increasing its base of patients and because the propriety of the program was ensured by the Defendants *vis-a-vis* the Alliance Agreement as well as their numerous representations.

47.     However, unbeknownst to the Plaintiffs, based on the NDC's of the Alliance Drugs, the Alliance Drugs were more expensive and resulted in greater insurance reimbursements to the prescribing pharmacy.

48.     Further, unbeknownst to the Plaintiffs, the higher reimbursements, and thus greater cash flow and profits to the fulfillment pharmacy, was the economic purpose of the Alliance Program.

49.     Under the terms of the Alliance Agreement, the revenue received by the Plaintiffs based on its filling prescriptions for the Alliance Drugs reimbursed by insurance companies was

allocated as follows, as set forth in the Alliance Agreement: 20% to Alliance, 60% to Mitland and 20% was retained by Plaintiffs.

50.     Plaintiffs did not have a separate agreement with Mitland, but rather provided the payments to Mitland as directed by the Defendants consistent with the amounts set forth in the Alliance Agreement.

51.     In particular, Plaintiffs was directed to send Alliance's remittance to 7480 Pines Blvd, Suite 600, Miami, Florida.

52.     Further, Plaintiffs was directed to send Mitland's remittance to 15757 Pines Blvd, Suite 739, Hollywood, Florida.

53.     Upon information and belief, the Defendant Doctors prescribing medicines through the Alliance Program were recruited by, solicited by, or directly participating in the Alliance Program and, upon information and belief, were aware of the fraudulent nature of the program.

54.     Upon information and belief, the Defendant Doctors, including but not limited to Palumbo, Chapman, and Waldrop, only conducted Video Appointments with purported patients residing in the state in which the Defendant Doctor was licensed to practice medicine, and thus, authorized to prescribe medicine.

55.     As represented to Plaintiffs, only patients with private insurance could be prescribed Alliance Drugs through the Alliance Program.

56.     Defendant Doctors were provided by Alliance, or other of the Defendants herein, a "menu" – in the form of a pre-printed prescription – of the Alliance Drugs such that the prescription written by the Defendant Doctor would be assured to be an Alliance Drug. A copy of one of the Alliance Drug pre-printed prescription forms utilized by the Defendants as part of the Alliance Program is attached hereto as Exhibit 2 (redacted).

57.     Upon completing the prescription, the Defendant Doctor was directed to send the prescription to an email address provided by Alliance.

58.     Upon receipt of the prescription from the Defendant Doctor, Alliance would route the Alliance Drug prescription ("Alliance Prescription") to a pharmacy in the state in which the patient resided. In this case, Plaintiffs received Alliance Prescriptions for patients residing in Louisiana.

59.     Upon its receipt of an Alliance Prescription, Plaintiffs would confirm the apparent legitimacy of the Alliance Prescription by verifying the name and address of the patient, the private insurance of the patient, and the accreditation of the Defendant Doctor.

60.     If Plaintiffs had the Alliance Drug in inventory, Plaintiffs would ship the drug to the Louisiana patient via UPS.

61.     If Plaintiffs did not have the prescribed Alliance Drug in its inventory, Plaintiffs would email Alliance or its owners/affiliates/agents, following which contact, Alliance would contact a wholesaler, one of the Defendant Wholesalers herein, including Real Value and Landmark, to ship the necessary Alliance Drug to Plaintiffs in order to allow Plaintiffs to fill the Alliance Prescription.

62.     Plaintiffs did not previously have a relationship with any of the Defendant Wholesalers through which Alliance ordered the Alliance Drugs. Nor did Plaintiffs have primary vendor agreements, or other similar agreements, with any of the Defendant Wholesalers.

63.     Defendant Wholesalers would ship the Alliance Drugs to Plaintiffs, then issue an invoice to Plaintiffs based on the order placed by Alliance, directly or indirectly.

64.     When shipping the Alliance Drugs to patients, Plaintiffs was instructed to include a "pink slip" with the prescribed Alliance Drug. The "pink slip" set forth a telephone number the patient could call if the patient had a question about the Alliance Drug prescription. A copy of one

of the "pink slips" utilized by the Defendants as part of the Alliance Program is attached hereto as Exhibit 3.

65.     The telephone number on the "pink slip" was not the telephone number of the Defendant Doctor or the Plaintiffs.

66.     At least as of a date following the Express Scripts' subsequent fraud, waste and abuse audit (as described below), the telephone number was out of service.

67.     On or about October 12, 2018, Plaintiffs executed the Alliance Agreement and commenced participation in the Alliance Program.

68.     In approximately March of 2019, Express Scripts (as well as other PBMs which had contracts with Plaintiffs) commenced a "fraud, waste and abuse" investigation. The "fraud, waste and abuse" investigation was authorized by and consistent with the terms of the PBM form contracts.

69.     Express Scripts' investigation revealed many concerning facts involved in the business plan and relationship established under the Alliance Agreement. For example, the investigation revealed that in many instances there was no patient-prescriber relationship. Exhibits 4 and (redacted) 2. Cross-referencing the prescription numbers in the referenced Exhibits reveals that there was "[n]o patient-prescriber relationship," as required and purported.

70.     As stated, the Express Scripts' fraud, waste and abuse investigation revealed that many of the purported patients failed to meet with any doctor despite Defendant Doctors writing prescriptions that were sent through Alliance then ultimately to Plaintiffs for fulfillment.

71.     On or about August 8, 2019, Express Scripts informed Plaintiffs that it had recently completed its fraud, waste and abuse investigation and it was determined that Alliance was engaged in a scheme which implicated the Defendants herein.

72.     Express Scripts' investigation uncovered Defendants' criminal enterprise which, upon information and belief, consisted of fraudulently prescribing medicine to individuals without their knowledge or consent resulting in insurance payments obtained through fraudulent claims.

73.     As a result of the Alliance Agreement and the corrupt and fraudulent acts of Alliance acting in concert with Defendants herein, Express Scripts terminated its business relationship with Plaintiffs on or about August 23, 2019, which resulted in the loss of business and income in an amount in excess of $1 million. *See*, Exhibit 5.

74.     Of particular significance, Express Scripts withheld reimbursements otherwise due to Plaintiffs, which reimbursements all related to the claims arising from the Alliance Program.  In total, Express Scripts withheld $46,608.89 of reimbursements otherwise payable to Plaintiffs.

75.     When the Express Scripts' fraud, waste and abuse investigation was commenced, Alliance feigned adherence to the indemnification provisions of the Alliance Agreement by allegedly providing the assistance of an attorney to work for the benefit of Plaintiffs.

76.     Defendants further represented to Plaintiffs such investigations were routine and the Defendants reaffirmed the purported legitimacy of the Alliance Program.

77.     Further, when confronted with the results of the Express Scripts' investigation and requesting information to support the Alliance Program and the representations and warranties made by the Defendants, Alliance advised that Plaintiffs was the only pharmacy with which it had an agreement and, as such, Alliance was ceasing its business operation.

78.     Express Scripts was not the only PBM completing a fraud, waste and abuse audit of the Plaintiffs, but as of the date of this Complaint, only the Express Scripts audit was completed.

## COUNT I (Civil RICO)

79.     Plaintiffs incorporate the above paragraphs of the within Complaint by reference herein.

80.     Defendants together conspired and endeavored to, and did through concerted action, violate 18 U.S.C. § 1961 and Fla. Stat. §§ 772.103 and 895.03(2).

81.     Defendants acted in concert with one another with criminal intent to derive proceeds from a pattern of criminal activity in the operation of their criminal enterprise as alleged above.

82.     Defendants' criminal enterprise consisted of fraudulently prescribing medicine to individuals without their knowledge or consent such that resulted in payments obtained through fraudulent insurance reimbursement claims.

83.     Defendants' criminal enterprise further consisted of developing a "menu" of drugs with specific NDC's that resulted in the highest reimbursements from insurance which were the exclusive drugs prescribed by the Defendant Doctors with respect to a purported patient. *See,* Exhibit 2.

84.     Defendants' enterprise was and, upon information and belief, continues to be, an ongoing organization with a common purpose of engaging in the same criminal conduct noted above and which continues to function as a continuing unit.

85.     Defendants engaged in a pattern of corrupt activity, as evidenced by the results of Express Scripts' fraud, waste, and abuse investigation. *See,* Exhibit 5.

86.     Upon information and belief, Alliance, Mitland, and Moscoso owned and operated the criminal enterprise in which all Defendants knowingly participated.

87. Further, as part of the criminal enterprise, Alliance and/or certain of the other Defendants recruited the Defendant Wholesalers and Defendant Doctors to participate in the fraudulent scheme.

88. Defendants, with criminal intent, received proceeds derived from a pattern of racketeering activity for the establishment or operation of the enterprise and to financially enrich themselves to the detriment of Plaintiffs who, at all times, believed it was legitimately serving patients' medical needs.

89. Alliance, with the assistance and participation of the other Defendants named herein, obtained Plaintiffs' unwitting assistance in the criminal enterprise by fraudulent means.

90. Defendants' wrongful conduct as alleged herein resulted in damages incurred by the Plaintiffs in excess of $75,000, to be proven at trial, and entitling the Plaintiffs to threefold the actual damages it sustained, in addition to reasonable attorney's fees and court costs.

## COUNT 2 (Fraud)

91. Plaintiffs incorporate the above paragraphs of the within Complaint by reference herein.

92. As alleged above, Alliance, Landau, Lavoie, and/or Singer made numerous false and fraudulent representations to Plaintiffs in order to induce the latter into entering the Alliance Agreement and participating in the Alliance Program.

93. These Defendants' representations were made with the knowledge that their statements were untrue.

94. Further, these Defendants' false representations and statements were material facts to induce Plaintiffs to enter the Alliance Agreement, including guarantees and warranties that Alliance would perform all obligations in compliance with all applicable federal, state and local laws.

95.     Plaintiffs reasonably and justifiably relied upon the false representations and statements of Alliance, Landau, Lavoie, and/or Singer

96.     These Defendants' false representations and statements were intended to and did induce Plaintiffs to enter into the Alliance Agreement, such that resulted in Plaintiffs sustaining damages in excess of $75,000, as will be proven at trial.

## COUNT 3 (Civil Conspiracy)

97.     Plaintiffs incorporate the above paragraphs of the within Complaint by reference herein.

98.     Upon information and belief, each of the Defendants had knowledge of the fraudulent nature of the Alliance Program, and each Defendant served a distinct and critical role in the operation of the Alliance Program.

99.     At all times relevant, each of the Defendants, individually and collectively, acted in concert with each other in furtherance of the fraudulent scheme against the Plaintiffs.  Further, at all times relevant, Defendants actively participated in a civil conspiracy with and among themselves, and with other individuals and entities yet to be identified, for the purpose of obtaining remuneration from fraudulently prescribed prescription drugs.

100.     As a result of the conspiracy, each of the Defendants, individually and collectively, received an economic benefit from the remuneration received from the fraudulently prescribed prescription drugs.

101.     The Defendants' conspiracy was knowing, malicious, and intentional or in reckless disregard of the rights of the Plaintiffs.

102.     Defendants substantially assisted one another in their scheme to seek reimbursement for fraudulently prescribed prescription drugs.

103.    At all relevant times, one or more of the Defendants concealed material facts from the Plaintiffs or misrepresented material facts to the Plaintiffs concerning the Alliance Program, the relation of the Defendants, the absence of doctor-patient relationships, among other material facts.

104.    Such concealment or misrepresentation of material facts was done with the intent to mislead Plaintiffs into relying thereon.

105.    As a result of the fraud and other unlawful conduct of the Defendants participating in the conspiracy, the Plaintiffs has and continues to be damaged in an amount in excess of $75,000, as will be proven at trial, plus punitive damages, attorney's fees, and interest as deemed just and appropriate by the Court.

### COUNT 4 (Fraudulent Practices, Fla. Stat. § 817.034)

106.    Plaintiffs incorporate the above paragraphs of the within Complaint by reference herein.

107.    The Defendants, working in concert with one another, engaged in a systematic, ongoing course of wrongful conduct.

108.    The Defendants, working in concert with one another, intended to, and did, defraud one or more persons, or intended to, and did, obtain property from one or more persons using fraudulent means.

109.    The Defendants' actions were committed by false or fraudulent pretenses, representations, promises or willful misrepresentations of a future act.

110.    The Defendants, through their concerted efforts, obtained certain property, including the good-will of Plaintiff's business and the desecration thereof, the unknowing assistance of Plaintiff's efforts in the scheme, and the ill-gotten gains derived from the scheme.

## COUNT 5 (Tortious Interference with a Business Relationship)

111.   Plaintiffs incorporate the above paragraphs of the within Complaint by reference herein.

112.   Plaintiffs had a long-standing and lucrative business/contractual relationship with Express Scripts.

113.   Plaintiffs' relationship with Express Scripts was necessary to the vitality of Plaintiffs' ongoing business.

114.   Upon information and belief, Defendants knew of the business/contractual relationship between Plaintiffs and Express Scripts.

115.   Further, upon information and belief, Defendants acted in concert with one another to intentionally and unjustifiably interfere with the business/contractual relationship between Plaintiffs and Express Scripts.

116.   As a result of Defendants' tortious interference with Plaintiffs' business/contractual relationship with Express Scripts, Plaintiffs have sustained damages in excess of $75,000, as will be proven at trial.

## COUNT 6 (Breach of Contract)

117.   Plaintiffs incorporate the above paragraphs of the within Complaint by reference herein.

118.   Plaintiffs and Alliance entered into a contract, *i.e.* the Alliance Agreement. *See,* Exhibit 1.

119.   Plaintiffs did all essential things which the contract required of them.

120.   All conditions required by the contract for Alliance's performance had occurred.

121.   However, as fully alleged above, Alliance failed to comply with its contractual obligations by, among other things, failing to operate the Alliance Program in compliance with all applicable laws and regulations.

122.   Plaintiffs incurred damages in excess of $75,000, as will be proven at trial, as a direct and proximate result of Alliance's breach of the Alliance Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court enter a judgment in its favor, holding that:

A.   Two or more of the Defendants did act in concert in a criminal enterprise in violation of 18 U.S.C. § 1961 and Fla. Stat. §§ 772.103 and 895.03(2), which directly and proximately caused damage to Plaintiffs in excess of $75,000 or otherwise in a greater amount to be proven at trial;

B.   At least one of the Defendants committed fraud which directly and proximately caused damage to Plaintiffs in excess of $75,000 or otherwise in a greater amount to be proven at trial;

C.   At least one of the Defendants tortuously interfered with Plaintiffs' business relationship with Express Scripts, which directly and proximately caused damage to Plaintiffs in excess of $75,000 or otherwise in a greater amount to be proven at trial; and

D.   Alliance breached its contract with Plaintiffs, which directly and proximately caused damage to Plaintiffs in excess of $75,000 or otherwise in a greater amount to be proven at trial.

Respectfully submitted,


/s/ Patrick J. McIntyre_____
Patrick J. McIntyre (Florida Bar No. 84474)
Weston Hurd LLP
1301 East 9th Street, Suite 1900
Cleveland, Ohio 44114
Telephone:  (216) 241-6602
Facsimile:  (216) 621-8369
E-mail:        pmcintyre@westonhurd.com
*Counsel for Plaintiffs*


## JURY DEMAND

A trial by jury as to all issues is hereby demanded.


/s/ Patrick J. McIntyre_____
Patrick J. McIntyre (Florida Bar No. 84474)